IN THE DISTRICT COURT FOR THE UNITED STATES OF THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
JOHN DILLARD, et al.,         )
                              )
    Plaintiffs,                )
                              )
ROBERT R. BINION and           )
JOHN WRIGHT,                   )
                              )
    Plaintiffs-Intervenors,)
                              )    CIVIL ACTION NO.
    v.                        )    2:87cv1179-MHT
                              )         (WO)
CHILTON COUNTY COMMISSION,    )
et al.,                       )
                              )
    Defendants.               )
```

OPINION

This matter is before the court on defendant Chilton County Commission's motion to dismiss this action. The plaintiffs do not object to dissolution of the 1988 consent decree and dismissal of this action, but only on the condition that the court hold that the seven-member cumulative-voting election system required by the consent decree is now authorized by, and does not violate,

Alabama law. The commission's dismissal motion to will be granted.

As this court noted in its opinion approving modification of the 1988 consent decree, <u>Dillard v. Chilton County Com'n</u>, 2008 WL 912753 (M.D. Ala. 2008), this action is the last of the 180 court-ordered election plans still active in the longstanding set of <u>Dillard</u> cases. These cases began with <u>Dillard v. Crenshaw County</u>, 640 F. Supp. 1347 (M.D. Ala. 1986), and eventually involved the governing bodies in 192 local jurisdictions in Alabama. By passing Act No. 2006-252, now codified at 1975 Ala. Code § 11-80-12, the Alabama Legislature adopted under state law all court-ordered election plans to which there is no pending litigation challenging the plan. Act No. 2007-488 incorporated Act No. 2006-252 in an even broader statutory provision, now codified at 1975 Ala. Code § 11-3-1(c). Section 11-3-1(c), as amended by Act No. 2007-488, provides:

> "Unless otherwise provided by local law, <u>by court order</u>, or governed by Section

> 11-80-12, and as otherwise provided in subsection (d), there shall be in every county a county commission, composed of the judge of probate, who shall serve as chairman, and four commissioners, who shall be elected at the time prescribed by law and shall hold office for four years until their successors are elected and qualified."

(Emphasis added.)  Section 11-80-12 provides:

> "Notwithstanding any other provision of law to the contrary, any board of education, county commission, or municipal governing body whose currently serving members have been elected by a method of election and a specific number of seats prescribed by a federal court shall retain that manner of election and composition until such time as the method of election or number of seats is changed in accordance with general or local law. This section shall not apply in any county where a federal court has overturned the previous order concerning the manner of election and the number of members of a county commission and shall not apply in any county where there is currently pending litigation, or appeals relating thereto, challenging previous court orders or consent orders concerning the manner of elections or the number of members or districts of a county commission."

Parts of Act No. 2007-488 were submitted for and have received preclearance under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  The preclearance letter from the U.S. Attorney General states that § 11-3-1(c) is one of the parts of Act No. 2007-488 to which he does not object. Letter, Acting Chief, Voting Section, U.S. Department of Justice, to Winfred J. Sinclair, Assistant Alabama Attorney General, Apr. 4, 2008. (Doc. No. 235-2). Therefore, § 11-3-1(c) has been precleared under § 5 of the Voting Rights Act.

When Act No. 2006-252 was enacted there was pending in this action a challenge to the 1988 consent decree by intervenors Gilbert Green and Calvin Jones, Jr.  This court upheld the Green intervenors' challenge and vacated the consent decree.  <u>Dillard v. Chilton County Comm'n</u>, 447 F. Supp.2d 1273, <u>amended</u>, 447 F.Supp.2d 1280 (M.D. Ala. 2006).  This court then approved the commission's plan for "restor[ing] Chilton County, Alabama to an election scheme completely free of the 1988 injunction in

4

a way that is feasible, equitable, and constitutional." Dillard v. Chilton County Comm'n, 452 F. Supp.2d 1193, 1194 (M.D. Ala. 2006). The approved remedial plan required "[t]he commission [to] draft a bill and submit it to the legislature for enactment under state law. Once the bill obtains § 5 preclearance under the Voting Rights Act, the new election scheme can be implemented for the 2008 election cycle." Id. at 1197. Pursuant to this plan, the commission procured passage of a local act in May 2007 calling for the commission to be composed of five members elected from single-member districts. Ala. Act No. 2007-292.

However, the Eleventh Circuit Court of Appeals vacated the orders of this court upholding the Green interveners' challenge and remanded this case back to this court with instructions to dismiss the Green intervenors' claims, without prejudice, for lack of standing. Dillard v. Chilton County Comm'n, 495 F.3d 1324, 1340 (11th Cir. 2007). This court vacated the

5

orders upholding the Green interveners' challenge and reinstated the 1988 consent decree. Dillard v. Chilton County Comm'n, 525 F. Supp.2d 1315 (M.D. Ala. 2007). Act No. 2007-292 was never submitted for § 5 preclearance and thus has never been in force and effect. The Green intervenors filed a petition for writ of certiorari in the United States Supreme Court seeking review of the Eleventh Circuit's decision, but the petition for writ of certiorari was denied. Green v. Chilton County Comm'n, 128 S.Ct. 2961 (2008).

Thus, there is no longer currently pending any litigation, including appeals, challenging the 1988 consent decree or any other orders concerning the manner of elections or the number of members of the Chilton County Commission. The question, therefore, is whether § 11-3-1(c) and § 11-80-12 now apply to this litigation such that they now provide state-law authority for the election system prescribed by the 1988 consent decree.

6

The court concludes there are alternative reasons for construing § 11-3-1(c) and § 11-80-12 to provide state-law authority for the election system prescribed by the 1988 consent decree.  First, § 11-80-12, enacted in 2006, excludes the Chilton County Commission from its operation only so long as "there is currently pending litigation, or appeals relating thereto, challenging previous court orders or consent orders concerning the manner of elections or the number of members or districts of a county commission."  (Emphasis added.)  The term "currently," as the dictionary says, means "at the present time" or "now."  And, because § 11-80-12 is a general law enacted for a remedial purpose, the "current" time it refers to should be the point in time when the law is being applied, not the time the law was enacted. See Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432 (Ala. 2001) ("courts are required to apply in a particular case the law as it exists at the time it enters its final judgment"); accord, e.g., Dennis v.

Pendley, 518 So.2d 688 (Ala. 1987) (holding that § 5 of the Voting Rights Act, 42 U.S.C. § 1973c, and 1975 Ala. Code § 28-2A-1 should be applied to circumstances existing at the time the City of Clanton implemented an annexation election and should not be applied to circumstances existing when the annexation resolution and § 28-2A-1 were enacted).

If the Alabama Legislature had intended forever to exclude Chilton County from the operation of § 11-80-12, it could have employed one of the phrases clearly to that effect often appearing in Alabama statute law, such as "shall not apply to ... litigation pending as of the effective date of this Act." Ala. Act No. 90-384 § 4 (quoted in Johnson v. Alabama Power Co., 664 So.2d 877, 879 (Ala. 1995)). Alabama cases include numerous other examples where the legislature's reference to the "effective date" of an act as indicative that the statute's provisions are not, in some instances, to be applied prospectively. E.g., Ex parte Zimmerman, 838

So.2d 408, 409 (Ala. 2002); Stephenson v. Lawrence County Bd. of Education, 782 So.2d 192, 199 (Ala. 2000); Ex parte Southern Ry., 556 So.2d 1082, 1085 (Ala. 1989); Ex parte Progressive Casualty Ins. Co., 533 So.2d 230, 231 (Ala. 1988). Thus, because there is no "currently pending" litigation challenging the 1988 consent decree, this court construes § 11-80-12 as incorporating the consent decree's election system into state law.

Second, the phrase "by court order" in § 11-3-1(c), as amended by Act 2007-488, arguably provides general law authority for the consent decree's election scheme in Chilton County notwithstanding the Green intervenors' challenge. This more recent amendment to the general law governing the composition of county commissions in Alabama uses broader language than does § 11-80-12 and does not exclude court orders that are subject to pending litigation. At the very least, read in pari materia with § 11-80-12, § 11-3-1(c) reinforces a prospective construction of § 11-80-12, according to which the

9

phrase "currently pending litigation" must be read as referring to the time the statute is applied, rather than to the time it was enacted.

Interpreting the word "currently" to mean 'at the time the act is applied,' rather than 'at the time the act becomes law' is the only reading of the act that implements the intent of the Alabama Legislature. That intent was to provide a basis in state law for changes in the manner of election, or changes in the composition, of certain governmental bodies that initially occurred because of a court order. If "currently" is understood to mean 'at the time the act becomes law,' then changes made in the Chilton County Commission's manner of election and composition would be without a clear basis in state law, a result plainly at odds with the purpose of the statute. On the other hand, if the word "currently" is read to mean 'at the time the act is applied,' the statute is seen as deferring to ongoing litigation and taking effect only if the litigation

itself does not otherwise resolve the issue by, for example, striking down the court-ordered changes. Only this second reading of the act is consistent with the apparent purpose of the legislature.

***

An appropriate judgment will be entered granting the commission's dismissal motion and holding that § 11-3-1(c) and § 11-80-12 of the 1975 Ala. Code now provide state-law authority, enforceable under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c, for the number of seats and method of electing Chilton County Commissioners required by the 1988 consent decree.

DONE, this the 23rd day of March, 2009.

    /s/ Myron H. Thompson
  UNITED STATES DISTRICT JUDGE